FILED

2016 JUN -1 PM 4: 21

CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
TOLEDO

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **INDICTMENT** |
| Plaintiff, | ) ) | **3:16 CR 183** |
| v. | ) ) | CASE NO. _____ |
| YAHYA SAYID IBRAHIM, HUSSEIN AHMED, and ABDUL HAJI FAQI a/k/a ABDULQANI M. FAQI, | ) ) ) ) ) | Title 18, United States Code, Sections 2, 1347, and 1349 |
| Defendants. | | **JUDGE HELMICK** |
| | | **MAG. JUDGE JAMES R. KNEPP II** |

The Grand Jury charges:

I. **BACKGROUND**

At all times material to this Indictment:

A. **Defendants**

  1. Defendant YAHYA SAYID IBRAHIM ("YAHYA") was the founder and owner of Metro Medical Transportation, LLC ("MMT"), an ambulette and taxi company. From in and around January 2011 until the date of this Indictment, YAHYA was a driver for MMT and Blue Line Express Taxi and Medical Transport ("BLUELINE"), an ambulette and taxi company.

  2. Defendant HUSSEIN AHMED ("HUSSEIN") was at times the owner of BLUELINE. On or about December 15, 2014, HUSSEIN purchased BLUELINE from

ORIGINAL

Defendant ABDUL FAQI. From in and around January 2012 until the date of this Indictment, HUSSEIN was a driver for BLUELINE and MMT.

3. Defendant ABDUL HAJI FAQI a/k/a ABDULQANI M. FAQI ("ABDUL") was the founder and owner of BLUELINE from on or about November 18, 2009 until on or about December 15, 2014. From on or about November 18, 2009 until on or about the date of this Indictment ABDUL was a driver for BLUELINE.

B. Companies

4. Blue Line Express Taxi and Medical Transport ("BLUELINE"), was an ambulette and taxi company, with a registered address of 4841 Monroe Street, Suite 235, Toledo, Ohio 43623. BLUELINE was certified as a Medicaid provider on or about March 1, 2010 and was issued an Ohio Medicaid Number of 3017087, which became retroactively effective on November 19, 2009. Ohio Department of Job and Family Services issued BLUELINE an Ohio Medicaid Legacy Number of 0077392, which became retroactively effective on February 7, 2013.

5. Metro Medical Transportation, LLC ("MMT"), was an ambulette and taxi company, with a registered address of 4841 Monroe Street, Suite 204, Toledo, Ohio 43623. MMT also operated out of 3144 West Sylvania Avenue, Toledo, Ohio 43613. MMT was certified as a Medicaid provider on or about July 10, 2014 and was issued an Ohio Medicaid Number of 0096879 which became retroactively effective on or about December 17, 2013.

C. The Medicaid Program and Ambulettes

6. Medicaid provided medical insurance coverage for the poor under the Social Security Act (42 U.S.C. §1396 et seq.). Until July 2013, Medicaid was administered in Ohio by the Ohio Department of Job and Family Services (ODJFS). After July 2013, Medicaid was

2

administered in Ohio by the Ohio Department of Medicaid (ODM). Federal funds paid for 60% of Ohio Medicaid benefits; the State of Ohio funded the remainder. Ohio Medicaid was a federal health benefit program within the meaning of 18 U.S.C. § 24(b).

7. On or about December 19, 2009, ODJFS received a written Provider Application from ABDUL FAQI to become a Medicaid provider of ambulette transportation services in the State of Ohio. Defendant ABDUL FAQI signed the agreement as the authorized representative of BLUELINE. The agreement provided that BLUELINE would bill Medicaid only for ambulette transportation that complied with federal and state laws. ODJFS assigned Provider Number 3017087 to BLUELINE.

8. On or about December 20, 2012, ODJFS received a written Provider Application from ABDUL FAQI to re-enroll as a Medicaid provider of ambulette transportation services in the State of Ohio. Defendant ABDUL FAQI signed the agreement as the authorized representative of BLUELINE. The agreement provided that BLUELINE would bill Medicaid only for ambulette transportation that complied with federal and state laws. ODJFS assigned Legacy Provider Number 0077392 to BLUELINE.

9. On or about January 21, 2014, ODM received a Provider Application from YAHYA IBRAHIM to become a Medicaid provider of ambulette transportation services in the State of Ohio. Defendant YAHYA IBRAHIM signed the agreement as the CEO of MMT. The agreement provided that MMT would bill Medicaid only for ambulette transportation that complied with federal and state laws. ODM assigned Provider Number 0096879 to MMT.

10. Ohio Administrative Code, which governed ambulette transportation, provided that:

a. An "ambulette" was a vehicle designed to transport individuals sitting in wheelchairs. It had, at a minimum, permanent fasteners to secure the wheelchair to the inside of the vehicle, rider restraints, a stable access ramp or hydraulic lift, company identification on both sides or the rear of the vehicle, and a ceiling-to-floor height of 56 inches.

b. An "attending practitioner" was a licensed doctor of medicine, osteopathy or podiatry, or an advance practice nurse, who provided ongoing care and treatment to the transported individual and could certify that the person was non-ambulatory, had medical need for ambulette transport, and for how long.

c. A "non-ambulatory" person had a permanently or temporarily disabling condition that precluded transportation in a vehicle not modified or created for transporting such a person.

d. Ohio Medicaid reimbursed a provider for ambulette transportation only if:

   i. the recipient's attending practitioner certified that it was medically necessary,

   ii. the attending practitioner certified that the recipient was non-ambulatory, could be transported in a wheelchair, and did not need an ambulance,

   iii. the recipient was transported in a wheelchair,

   iv. the vehicle used was an ambulette, and

   v. transport was to or from a Medicaid covered service.

4

e. The provider was required to keep documentation of compliance with conditions of reimbursement.

f. The provider was required to obtain an Ambulette Certification of Medical Necessity (CMN) completed, dated and signed by the Medicaid recipient's attending practitioner. The CMN was required to state the medical condition that rendered the recipient non-ambulatory and certify that ambulette transport was medically necessary. The provider was required to obtain the CMN before claiming payment from Medicaid.

g. If the attending practitioner certified that the recipient was temporarily non-ambulatory, the attending practitioner was required to certify how long ambulette transport was necessary. The CMN was then valid for that length of time. If the period exceeded 90 days the provider was required to obtain a new CMN.

h. If the attending practitioner certified that the recipient was permanently non-ambulatory, the CMN was valid for one year from the first ambulette transport.

i. The CMN was valid as long as the recipient remained non-ambulatory. If the provider noted a change in ambulatory status, it was required to obtain a new CMN from the attending practitioner. The CMN was non-transferable from one provider to another.

j. In addition to the CMN, the provider was required to maintain documentation of dates of service, times and addresses of pick up and drop off, the driver's and attendant's full names, the recipient's full name

5

      and Medicaid number, vehicle identification, the full name of the Medicaid-covered service provider, and mileage.

  k. Transportation services were billed for the pick-up and drop-off of a Medicaid recipient, accompanying mileage, and for any additional appropriate and justified services necessary for the transportation service. Each discrete service was designated a specific code by ODJFS. "A0130" was the code used to designate a basic transportation service, indicating the transportation service actually occurred. "S0209" was the code used to designate the mileage of the transportation service. These billing codes were well known to the medical community, providers, and health care insurance companies.

## II. THE FRAUDULENT SCHEME

11. From on or about November 18, 2009 through on or about the date of this Indictment, Defendants YAHYA IBRAHIM, HUSSEIN AHMED, and ABDUL FAQI devised and intended to devise a scheme and artifice to defraud the Ohio Department of Medicaid/Medicaid and to obtain money by means of false and fraudulent pretenses, representations and promises.

12. It was a part of the scheme and artifice to defraud that Defendants YAHYA IBRAHIM, HUSSEIN AHMED, and ABDUL FAQI transported Medicaid recipients that did not require or use a wheelchair although the Defendants understood that Medicaid provided reimbursement for only those recipients who required the assistance of wheelchairs and were actually transported in wheelchairs.

13. It was a further part of the scheme and artifice to defraud that Defendants YAHYA IBRAHIM, HUSSEIN AHMED, and ABDUL FAQI, through BLUELINE and MMT, billed Medicaid for ambulette transportation services although Defendants were transporting Medicaid recipients in vehicles that were not ambulettes, such as Scion vans and Toyota Camrys.

14. It was a further part of the scheme and artifice to defraud that Defendants YAHYA IBRAHIM, HUSSEIN AHMED, and ABDUL FAQI, through BLUELINE and MMT, billed Medicaid for ambulette transportation services although Defendants were transporting multiple Medicaid recipients in the same vehicle, although Defendants understood that Medicaid provided reimbursement for only a single recipient in a vehicle at a time.

15. It was a further part of the scheme and artifice to defraud that Defendants YAHYA IBRAHIM, HUSSEIN AHMED, and ABDUL FAQI often failed to obtain CMNs from Medicaid recipients their company transported, although Defendants understood that Medicaid required a CMN for each Medicaid recipient. Defendants also sometimes transported Medicaid recipients for whom Defendants falsified CMNs.

16. It was a further part of the scheme and artifice to defraud that by billing for services that were not provided as indicated on the billings submitted to ODJFS/Medicaid, Defendants YAHYA IBRAHIM, HUSSEIN AHMED, and ABDUL FAQI, through BLUELINE, received over $600,000.00 to which they were not entitled.

17. It was a further part of the scheme and artifice to defraud that by billing for services that were not provided as indicated on the billings submitted to ODJFS/Medicaid, Defendant YAHYA IBRAHIM, through MMT, received over $34,000.00 to which he was not entitled.

COUNTS 1 – 5
(Title 18, United States Code, Sections 1347 and 2)

18. The factual allegations contained in paragraphs 1 – 17 are realleged and incorporated by reference as though stated fully herein.

19. From on or about November 19, 2009 through on or about the date of this Indictment, in the Northern District of Ohio, Western Division, and elsewhere, Defendants YAHYA IBRAHIM, HUSSEIN AHMED, and ABDUL FAQI, through BLUELINE and MMT, knowingly and willfully executed, and attempted to execute, a scheme and artifice to defraud the Medicaid health care benefit program, and to obtain, by means of false and fraudulent pretenses, representations and promises described herein, money owned by, and under the custody and control of Ohio Medicaid, in connection with the delivery of and payment for health care benefits, items, and services.

20. On or about the dates listed below, in the Northern District of Ohio and elsewhere, Defendants YAHYA IBRAHIM, HUSSEIN AHMED, and ABDUL FAQI, having knowingly and willfully executed and attempted to execute the scheme and artifice to defraud the Ohio Medicaid program described above, and to obtain money, by means of the false and fraudulent pretenses, representations and promises described above, did execute and attempt to execute the scheme by submitting the claims for reimbursement set forth below:

| Count | Appx. Date of Service | Appx. Date of Submitted Claim / Amount of Claim | Appx. Date of Payment | Provider Name | Health Care Benefit Program / Beneficiary |
|---|---|---|---|---|---|
| 1 | 9/20/2013 | 9/26/2013 / $23.59 | 10/02/2013 | BLUELINE | Medicaid / D.R. |
| 2 | 9/30/2013 | 10/10/2013 / $23.59 | 10/16/2013 | BLUELINE | Medicaid / D.R. |
| 3 | 9/01/2014 | 9/12/2014 / $23.59 | Never Paid | BLUELINE | Medicaid / D.R. |

8

| 4 | 9/11/2014 | 9/18/2014 / $23.59 | 9/24/2014 | BLUELINE | Medicaid / P.M. |
| 5 | 1/03/2015 | 4/10/2015 / $23.59 | 4/15/2015 | MMT | Medicaid / P.M. |

All in violation of Title 18, United States Code, Sections 1347 and 2.

## COUNT 6
(Title 18, United States Code, Section 1349)

21. The factual allegations in paragraphs 1 – 17 are realleged and incorporated by reference as if stated fully herein.

22. From on or about November 18, 2009, through the date of this Indictment, the exact dates being unknown to the Grand Jury, in the Northern District of Ohio, Western Division, and elsewhere, Defendants YAHYA IBRAHIM, HUSSEIN AHMED, and ABDUL FAQI did knowingly and intentionally combine, conspire, confederate and agree with each other, and with others both known and unknown to the Grand Jury, to knowingly and willfully execute and attempt to execute a scheme and artifice to defraud a health care benefit program, and to obtain, by means of false and fraudulent pretenses, representations and promises, money owned by, and under the custody and control of, a health care benefit program; namely, Ohio Medicaid, in connection with the delivery of or payment for health care benefits, items and services, in violation of Title 18, United States Code, Section 1347.

### Object of the Conspiracy

23. It was an object of the conspiracy that YAHYA IBRAHIM, HUSSEIN AHMED, and ABDUL FAQI knowingly devised and intended to devise a scheme and artifice to defraud the Ohio Department of Medicaid/Medicaid and to obtain, by means of false and fraudulent pretenses, representations and promises, money owned by, and under the custody and control of,

a health care benefit program; namely, Ohio Medicaid, in connection with the delivery of or payment for health care benefits, items and services, as described in the factual allegations of paragraphs 1 through 19 of this indictment, and for the purpose of executing the scheme and artifice to defraud and attempting to do so, submitted fraudulent billings to Medicaid for non-covered transportation services that were not legally reimbursable by Medicaid, in violation of Title 18, United States Code, Section 1347.

### Manner and Means of the Conspiracy

24. The manner and means by which the objectives of the unlawful conspiracy were accomplished consisted, among other things, of the following actions by the defendants and others:

25. It was part of the conspiracy that during 2009, 2013, and 2014, the conspirators submitted Provider Applications to the ODJFS, and its successor, ODM, to become Medicaid providers of ambulette transportation services in the State of Ohio.

26. It was further part of the conspiracy that the conspirators, through their ambulette companies, transported Medicaid recipients that did not require or use a wheelchair, although the conspirators understood that Medicaid provided reimbursement for only those recipients who required the assistance of wheelchairs and were actually transported in wheelchairs.

27. It was a further part of the conspiracy that the conspirators, through their ambulette companies, billed Medicaid for ambulette transportation services although Defendants were transporting Medicaid recipients in vehicles that were not ambulettes, such as Scion vans and Toyota Camrys.

28. It was a further part of the conspiracy that the conspirators, through their ambulette companies, billed Medicaid for ambulette transportation services although Defendants

were transporting multiple Medicaid recipients in the same vehicle, although Defendants understood that Medicaid provided reimbursement for only a single recipient in a vehicle at a time.

29. It was further part of the conspiracy that the conspirators through their ambulette company transported Medicaid recipients to services that were not covered by Medicaid, although the conspirators understood that Medicaid only provided reimbursement for transports to Medicaid covered services, such as doctor's appointments and dialysis.

30. It was further part of the conspiracy that the conspirators through their ambulette company often failed to obtain CMNs from Medicaid recipients their company transported, although Defendants understood that Medicaid required a CMN for each Medicaid recipient; and sometimes transported Medicaid recipients for whom the conspirators falsified CMN's.

All in violation of Title 18, United States Code, United States Code, Section 1349.

## FORFEITURE: COUNTS 1 – 6

The Grand Jury further charges:

31. The allegations contained in Counts 1 through 6, inclusive, of this indictment are hereby re-alleged and incorporated herein by reference for the purpose of alleging forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) & 28 U.S.C. § 2461 and 18 U.S.C. § 982(a)(2).

32. As a result of the foregoing offenses, the Defendants, YAHYA IBRAHIM, HUSSEIN AHMED, and ABDUL FAQI, shall forfeit to the United States all property, real and personal, which constitutes or is derived from proceeds traceable to the commission of such offense(s), 18 U.S.C. § 981(a)(1)(C) & 28 U.S.C. § 2461; and, all property constituting, or derived from, proceeds the defendant obtained directly or indirectly as the result of such offense(s), 18 U.S.C. § 982(a)(2)

33. The Defendants, YAHYA IBRAHIM, HUSSEIN AHMED, and ABDUL FAQI, shall forfeit property, including, but not limited to, a sum of money equal to the value of all property involved in Count 1–36 in the form of a money judgment pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c), 18 U.S.C. § 982(b)(1), and 31 U.S.C. § 5317(c)(1)(B), and Federal Rule of Criminal Procedure 32.2.

## SUBSTITUTE PROPERTY

34. In the event that any property subject to forfeiture under 18 U.S.C. § 981(a)(1)(C) & 28 U.S.C. § 2461, and/or 18 U.S.C. § 982(a)(2), and/or 18 U.S.C. § 982(a)(1), and/or 31 U.S.C. § 5317(c)(1), as a result of any act or omission of the defendant(s):

   a.) cannot be located upon exercise of due diligence;

   b.) has been transferred or sold to, or deposited with a third party;

   c.) has been placed beyond the jurisdiction of this Court;

   d.) has been substantially diminished in value; or

   e.) has been commingled with other property which cannot be divided without difficulty,

35. It is the intent of the United States, pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c), 18 U.S.C. § 982(b)(1), and 31 U.S.C. § 5317(c)(1)(B), to seek forfeiture of any other property of the defendant(s), up to the value of the forfeitable property described above.

A TRUE BILL.


Original document - Signatures on file with the Clerk of Courts, pursuant to the E-Government Act of 2002.